## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
## CIVIL DIVISION

| | |
|---|---|
| UZIYAH IRIZARRY, PLAINTIFF, | : |
| | : |
| v. | : **CASE NUMBER:** |
| | : **FILED: FEBRUARY 12, 2021** |
| PROVIDENCE DEPARTMENT | : |
| OF PUBLIC SAFETY, PROVIDENCE | : |
| POLICE DEPARTMENT, | : |
| CITY OF PROVIDENCE, JOHN | : |
| DOE 1, JOHN DOE 2, | : |
| JOHN DOE 3, | : |
| JANE DOE 4, JANE DOE 5, | : |
| JOHN DOE 6, JOHN DOE 7, | : |
| JOHN DOE 8, DEFENDANTS | : **PLAINTIFF DEMANDS TRIAL BY JURY** |

## COMPLAINT

1.   Plaintiff Uziyah Irizarry (hereinafter "Plaintiff") and for his complaint against

Defendants including the Provident Department of Public Safety, the Providence

Police Department, the City of Providence, John Doe 1, John Doe 2, John Doe 3,

John Doe 4, Jane Doe 5, Jane Doe 6, and John Doe 7 (hereinafter "Defendants")

hereby alleges:

### PARTIES

2.   Plaintiff Uziyah Irizarry is a resident of Rhode Island over the age of eighteen (18)

years both now and at the time of all occurrences described in this complaint,

residing at 121 Burlington Street, Number 2, Providence, Rhode Island, 02906.

At the time of the underlying action, Plaintiff had a different legal name, Daniel

Acker, which was subsequently changed by court order.

3.      Defendants represent the corporate and governmental entities responsible for
        the Providence Police Department and include, individually, the officers and
        employees involved in the events alleged in this Complaint.  Defendants also
        include the City and relevant city agency's responsible for the actions described
        in this complaint.

## JURISDICTION & VENUE

4.      This action is brought for police behavior that shocks the conscience in violation
        of Plaintiff's First Amendment, Fourth Amendment, and Fourteenth Amendment
        Constitutional Rights pursuant to 43 U.S.C. § 1983 and therefore raises a federal
        question.

5.      Plaintiff, via his attorney, sought to redress allegations in written
        communications and phone calls, but no response was ever received.

## NATURE OF THE CASE

6.      On or about August 12, 2018, around midnight, Plaintiff was followed home by
        members of the Providence Police Department (hereinafter "PPD"), accused of
        suspicious activity, and arrested outside of his residence on a "warrant from
        Maine."

7.      Plaintiff is an Orthodox Jew by conversion and is of Hispanic ethnicity.  Plaintiff is
        identifiable as he wears a variety of religious garments.  During and throughout
        the arrest, members of the PPD discriminated against Plaintiff, tortured him, and
        inflicted physical injury and severe emotional distress intentionally in ways that
        they either knew were wrong or certainly should have; much of the activity

2

shocks the conscience.  The activity was animated by racial and religious bias,

reflected in the extreme anger of Defendants, their statements, and the pattern

of their actions.

8.    Upon information and belief, Plaintiff was racially profiled during his arrest, was

not given a reason for his arrest, was taunted repeatedly with religious and racial

epithets, was denied use of restroom facilities, was intentionally kept awake and

not permitted to sleep, physically abused while in custody, and denied his first

amendment rights to free expression of his religion, all by members of the PPD.

9.    Plaintiff suffered physical injuries to his wrists, a renewed bout of post-traumatic

stress disorder, severe emotional distress, trauma, anxiety, and depression as a

result of the outrageous behavior of the PPD and its employees.

10.   Plaintiff hereby seeks damages for his physical injuries, damages for the

emotional and psychological distress, reasonable attorney's fees and court costs,

in addition to punitive damages due to Defendants' intentional, egregious

discrimination against Plaintiff.

## STATEMENT OF CLAIM

11.   On or about August 12, 2018, around midnight, Plaintiff pulled into a grocery

store parking lot in his vehicle on his way home from a social gathering.  After

parking and contemplating the need to get up early for work the next morning,

Plaintiff reconsidered his late-night shopping run and decided to head home

instead.

3

12.    At that time, Plaintiff resided at 67 Ruggles Street, Third Floor, Providence,
       Rhode Island.  A marked police car followed Plaintiff from the grocery store
       parking lot to his home.

13.    Two officers of the PPD, names as of yet unknown, approached Plaintiff while he
       walked from his car to his home and arrested him in his driveway.  Upon
       information and belief, one officer was a white male (John Doe 1), the other a
       black male (John Doe 2).

14.    Plaintiff asked the officers why he was being arrested and they initially refused
       to answer.  Eventually, after repeated questioning, they told him it was "for an
       out of state warrant."  Plaintiff was then taken into the police car, handcuffed.
       In the back, he continued to ask about the cause of arrest as Plaintiff was
       unaware of any out of state warrant.  The white officer turned up the radio to
       max volume in order to block out Plaintiff's questions.  Eventually, he informed
       Plaintiff that it was a warrant from Maine, but refused to give any further detail.

15.    Plaintiff was brought to a police station in downtown Providence and
       encountered the Civilian Jail Sergeant (John Doe 3) who appeared to Plaintiff to
       be an Italian American male in his forties.  The Civilian Jail Sergeant was
       substantially taller than the Plaintiff, who is 5'7" tall.

16.    The Civilian Jail Sergeant was extremely aggressive with Plaintiff, immediately
       yelling at him and looking at him with rage.

17.    Plaintiff wears various artifacts of religious paraphernalia including a *tallit
       kattan,* ritual fringes required to be warn by Orthodox Jewish males, a *yarmulke*

4

(skullcap worn at all times by observant Jewish males), a start of David necklace, and a bracelet containing the text of the *Shema*, Judaism's central creed, taken from Deuteronomy 6:4. He was ordered to remove all of these artifacts by the Civilian Jail Sergeant and other officers.

18. Upon protesting and objecting, a female officer (Jane Doe 4) began verbally mocking Plaintiff's religious garb. Mistaking him a Muslim (he is an Orthodox Jew), she told him to "Pray to Allah" and laughed at him mockingly.

19. After argument ensued, the officer and Sergeant called down a Lieutenant who was, by appearance, a male in his fifties, approximately 5'9" in height. He said, "you made me do a lot of reading," and then told Plaintiff to hand over his religious artifacts repeatedly. Upon Plaintiff's refusal he said, "well, if you won't hand them over, I'm going to 'cuff you and keep you in the cell."

20. Then, the Civilian Jail Sergeant refused to let Plaintiff be handcuffed with his hands in front of him, aggressively forcing his hands behind his back and tightening the handcuffs until they caused excruciating pain and bruising, all done with anger and intent. Plaintiff could not use his hands for four (4) days after the episode due to the severe pain inflicted.

21. Plaintiff was placed into a cell for suicidal individuals, alone. The air conditioning was then actively turned up to full blast, uncomfortable and cold, upon information and disbelief, in order to torture Plaintiff.

22. Some time later, Plaintiff needed to use the restroom. After many minutes of pressing the restroom button in his cell, Plaintiff realized that the button did not

function properly, something no one had informed him of. He screamed loudly to try and get the attention of the officers. After more than thirty (30) minutes, someone finally came to let him use the restroom. Still three officers insisted on watching Plaintiff, one looking over his shoulder and two standing near the restroom door. All peered at him actively in order to cause shame and as part of the abusive pattern. They only released one hand from the handcuffs, forcing Plaintiff to try and use the restroom with only one hand.

23. Defendants refused to let Plaintiff sleep for an entire night in an effort to torture and abuse him. First, they refused Plaintiff's repeated requests to turn off the bright lights in his cell so that he might sleep. Moreover, whenever Plaintiff began to doze off, the Civilian Jail Sergeant came in, woke Plaintiff, and insisted on changing his handcuffs, tightening each pair excessively with rage and anger in an effort to inflict physical and psychological pain. Upon information and belief, this occurred approximately five (5) times throughout the night.

24. The next morning, a female lieutenant (Jane Doe 5), a police sergeant (John Doe 6), and a "morning jailer" (John Doe 7) came to the door and said they would agree to remove the handcuffs if Plaintiff would simply agree to take off and surrender his *tallit kattan,* the ritual fringes required to be worn at all times by Orthodox Jewish males. Plaintiff explained that his religion prevented him from doing so and begged for them to loosen or remove the handcuffs. They refused to do so and reiterated their conditions.

6

25. A man who identified himself as a prosecutor (John Doe 8) happened to be at the station and said that, because of Plaintiff's disrespectful behavior in refusing to cooperate, "I'm not giving you bail, you're going to be extradited to Maine."

## AS AND FOR A FIRST CAUSE OF ACTION – VIOLATION OF FOURTH AMENDMENT RIGHTS

## AGAINST UNLAWFUL SEIZRUE CODIFIED BY 43 U.S.C. §1983

26. Plaintiff hereby realleges and incorporates Paragraphs 1 through 25.

27. Defendants were acting under the color of the law during all of the allegations in this complaint.

28. Defendants know or should have known that the individual and collective actions were unlawful, discriminatory, and harmful.

29. Plaintiff was fully arrested by Defendants and then detained by them.

30. Defendants' failure to inform Plaintiff of the specific cause of his arrest and subsequent raising of the car volume was unlawful.

31. Screaming at Plaintiff, tightening the cuffs repeatedly and excessively, refusal to let him go to the bathroom, a denial of privacy, blasting the air conditioner intentionally, leaving the lights on, and actively preventing Plaintiff from sleeping amounted to a clear pattern or physical and psychological abuse amounting to systematized torture; this was an unlawful use of excessive and entirely unnecessary force.

## AS AND FOR A SECOND CAUSE OF ACTION – VIOLATION OF EQUAL PROTECTION PROVISION

## OF THE FOURTEENTH AMENDMENT BY 43 U.S.C. §1983

32. Plaintiff hereby incorporates Paragraphs 1 through 31.

33. Upon information and belief, Plaintiff was only stopped because of his Hispanic ethnicity. Driving his car to his home from a grocery store parking lot is not suspicious and there was no other probable cause.

34. When Defendants' told Plaintiff to "pray to Allah" and mocked him, they demonstrated that there was generalized animus based on ethnicity, in this case, perceived Muslim ethnicity, related to the color of his skin and religious dress. That they mistook his Jewish practice for Islam is of no relevance as the bias was clearly based on ethnicity, race, and religion.

35. When Defendants' only offered to remove Plaintiff's handcuffs and let him free in exchange for violating the tenets of his religion, Defendants' demonstrated their tangible and hateful bias. Defendant suffered ongoing trauma as a result of this experience.

## AS AND FOR A THIRD CAUSE OF ACTION – VIOLATION OF FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT BY 43 U.S.C. §1983

36. Plaintiff hereby incorporates Paragraphs 1 through 35.

37. Defendants violated Plaintiffs ability to practice his religion by demanding he remove religious garments and paraphernalia for no public safety reason and then offering *quid pro quos* for him to do so. This caused the Plaintiff to suffer severe emotional distress as his faith is the most important thing in his life.

## AS AND FOR A FOURTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38. Plaintiff hereby incorporates Paragraphs 1 through 37.

8

39. Defendants owed a duty of consideration to the Plaintiff as a result of their arresting him.

40. Religious discrimination, racial discrimination, excessive force, torture, and forcing someone to violate the tenets of their religion under the color of law are universally and clearly understood to cause trauma and suffering.

41. Defendants breached the duty of care owed to the Plaintiff through their actions.

42. As a direct and reasonably objective result of Defendants many breaches, Plaintiff predictably suffered extreme emotional distress and trauma.

## PLAINTIFF DEMANDS TRIAL BY JURY

**WHEREFORE**, Plaintiff seeks the following compensatory damages, attorney costs and court fees, and punitive damages for the Defendants torts, discrimination, harassment, and violation of Federal statutes and the United States Constitution:

    a) Defendants' immediate payment of compensatory damages in the amount of **$25,000** for the physical harm caused by the violent use of handcuffs a

    b) Defendants' additional payment of **$100,000** as compensation for the extreme emotional stress and trauma caused by Defendants activity.

    c) Defendants' additional payment of all medical costs, including ongoing therapy and trauma treatments relating to this incident.

d)   Defendant's payment of **$1,000,000.00** in punitive damages due to the

     Defendant's intentional, blatant, and repeated harassment and

     discrimination directed against Plaintiff and the shocking behavior under

     the color of law.

e)   Defendant's Payment of attorney's fees and court costs as provided by

     statute for cases arising under claims brought under 43 U.S.C. §1983

                                        RESPECTFULLY SUBMITTED,
                                        PLAINTIFF by his attorney

                                        Barry L. Dolinger (8704)
                                        Law Office of Barry Dolinger, Esq.
                                        55 Cromwell Street, Suite 1D
                                        Providence, Rhode Island, 02907
                                        (401) 400-2549
                                        Barry.dolinger@bdlawri.com